UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON,

    Plaintiff,

v.

1111 SW 1 AVE, LLC

    Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff James Watson ("Plaintiff") hereby sues Defendant, 1111 SW 1 Ave, LLC ("Defendant"), a Florida limited liability company, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. § 2201 and § 2202.

3. Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially

limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4. Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide him a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors mobile websites to ensure and determine whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6. Defendant owns and operates a place of public accommodation which is an upscale restaurant branded as "Marion Miami." The Marion Miami restaurant is located within Miami-Dade County in the trendy Brickell Avenue location at 1111 SW 1st Avenue, Miami, Florida 33130 and is open to the public. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). The Marion Miami restaurant is also referenced throughout as "place of public accommodation," "Marion Miami restaurant," or "restaurant."

7. Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] restaurant, bar, or other

establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

8. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, the **Error! Hyperlink reference not valid.** mobile website (hereinafter "mobile website") for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to, Defendant's Marion Miami restaurant. The mobile website delineates the goods, services, accommodations, privileges, benefits and facilities available to patrons at the restaurant's physical Brickell location.

9. The mobile website is offered by Defendant as a way for the public to become familiar with the Marion Miami menu selections, as well as information on hours of operation, restaurant location, provides a link to reserve a table for dining within the restaurant, allows the public to inquire about reserving the restaurant for private events, has a sign up option so the public can receive the restaurant's newsletter, and provides other information the Defendant seeks to communicate to the public. By the provision of menu selection, reservation services, and inquiry into private dining events as well as the provision of an online newsletter, the mobile website is an integral part of the goods and services offered by Defendant. By this nexus, the mobile website is characterized as a Place of Public Accommodation to Title III of the ADA[1], 42 U.S.C. §12181(7)(B).

10. Defendant's mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." (See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

their mobile device. As such, it has subjected itself to the ADA because its mobile website is offered as a tool to promote, advertise and sell its products and services from its brick-and-mortar restaurant location which is a place of public accommodation. As a result, Defendant's mobile website must interact with its restaurant and the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.[2]

11. Defendant's mobile website does not properly interact with the VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

12. Like the seeing community, Plaintiff would like the opportunity to be able to use Defendant's mobile website. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the mobile website as described and will be deterred from fully using Defendant's mobile website or dining at Defendant's restaurant.

13. Plaintiff is continuously aware of the violations on Defendant's mobile website and is aware that it would be a futile gesture to attempt to utilize Defendant's mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

14. Defendant and alike restaurants are fully aware of the need to provide full access to all visitors to its mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation

---

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

of blind and low vision individuals from the rest of society.

15.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendant's discriminatory practice.

16.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

17.     Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205 and 28 CFR 36.505.

## **COUNT I – VIOLATIONS OF TITLE III OF THE ADA**

18.     The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

19.     According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

20.     28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect

the privacy and independence of the individual with a disability."

21. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

22. Defendant's mobile website has been designed to integrate with its Marion Miami Brickell area restaurant through provision of a reservation service and the ability to inquire and book private events at the restaurant online; therefore, the mobile website is an extension of Defendant's Place of Public Accommodation. By and through its mobile website, Defendant extends its Place of Public Accommodation into individual persons' homes and portable devices wherever located. The mobile website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's Place of Public Accommodation. As such, Defendant's mobile website is integrated with, and is a nexus to, its brick-and-mortar restaurant.  Therefore, it is governed by the following provisions:

   a. U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

   b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

  c. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

  d. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

  e. 42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

  f. 42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

  g. 42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications

would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

   h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

  23. Plaintiff attempted to access and/or utilize Defendant's mobile website, but was unable to, and he continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

 i. Guideline 1.1.1 Non-Text Content is violated. Text alternatives for non-text content should be provided, and this is not the case. For example, the *MENU* label at the top of the menu page is not announced. Mobile VoiceOver screen reader software users hear "1 heading level 1" which does not allow mobile VoiceOver screen reader software users to understand that this label will lead them to the menu page.

 ii. Guideline 1.3.1 Info and Relationships is violated. For example, the *WhatsApp* graphic link is not labeled properly. Mobile VoiceOver screen reader software users hear this announced as "send link," which does not allow mobile VoiceOver screen reader software users to understand and utilize the link.

 iii. Guideline 2.4.4 Link purpose (in context) is violated and unlabeled links are present. For example, the "Marionmiam heading level 5 link" is announced four times after the restaurant location is announced. Mobile VoiceOver screen reader software users are not aware that these are links that direct mobile website users to social media sites.

 iv. Guideline 3.3.2 Labels or Instructions is violated. For example, the *main menu* icon is not labeled; it is announced only as "an end banner."

> v. Guideline 4.1.2 Name, Role, Value is violated. All elements must be built for accessibility and this is not the case. For example, the *Floor Plan* PDF is not accessible. Also, when a mobile VoiceOver screen reader software user swipes (up to 20 times in this instance), most of the announcements are announced as either "image" or a random number.

24. In this instant case, Defendant's mobile website reservation system is linked to a third party vendor. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third party vendor's reservation platform does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

25. As the owner and/or operator of the Marion Miami restaurant mobile website, Defendant is required to comply with the ADA and the provisions cited herein. This includes Defendant's obligation to create and maintain a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile website and the content therein, including the ability to make a reservation to dine within the Marion Miami restaurant.

26. With respect to its mobile website, Defendant has violated the ADA by failing to

interface its mobile website with VoiceOver screen reader software utilized by visually impaired individuals (as specifically delineated within paragraph 23) either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff accommodation on the basis of his disability:

      a.    by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

      b.    in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

      c.    in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

      d.    by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

      e.    by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

      f.    notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such

programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

g.  by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

h.  by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

27. Plaintiff is continuously aware of the violations within Defendant's mobile website and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

28. Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because he is disabled. As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within Defendant's mobile website. By continuing to operate its mobile website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory

conditions within Defendant's mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

29. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA and conform its mobile website to WCAG 2.1 Level A and AA Guidelines.

30. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to its mobile website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant when he visits the website to test for compliance with the ADA. Plaintiff desires to access the mobile website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this mobile website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

31. Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

32. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its mobile website to

make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff James Watson hereby demands judgment against Defendant 1111 SW 1 Ave, LLC and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that Defendant's mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;

b. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its mobile website to ensure that it is readily accessible to and usable by persons with vision impairment;

c. The Court issue an Order directing Defendant to alter its mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d. The Court issue an Order directing Defendant provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the mobile website for purposes of comprehending Defendant's Marion Miami menu selections, making reservations, inquiring/booking private events, and signing up for the restaurant's newsletter and during that time period prior to the mobile website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public through Defendant's mobile website.

e. The Court enter an Order directing Defendant to evaluate and neutralize its policies

      and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f.     The Court enter an Order directing Defendant to continually update and maintain its mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.     The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h.     The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Dated: May 16, 2022

                                  Respectfully submitted,

                                  */s/ J. Courtney Cunningham*
                                  J. Courtney Cunningham, Esq.
                                  J. COURTNEY CUNNINGHAM, PLLC
                                  FBN: 628166
                                  8950 SW 74th Court, Suite 2201
                                  Miami, Florida 33156
                                  T:  305-351-2014
                                  cc@cunninghampllc.com